FILED
JUN 04 2015
CLERK, U.S. BANKRUPTCY COURT
WEST. DIST. OF PENNSYLVANIA

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re: | Case No. 09-29574-GLT |
| PAUL E. KLAAS and BETH ANN KLAAS, | Chapter 13 |
| Debtors. | Related Doc. Nos. 137, 138, 139, & 140 |
| RONDA J. WINNECOUR, and ELIZABETH SHOVLIN, ESQ., | |
| Movants, | |
| v. | |
| PAUL E. KLAAS and BETH ANN KLAAS, | |
| Respondents. | |

## MEMORANDUM OPINION

Ronda J. Winnecour, chapter 13 trustee

Aurelius Robleto, Robleto Law, PLLC, for Elizabeth Shovlin

Gary W. Short, for Paul and Beth Ann Klaas

This case presents the question of whether a debtor must fully and completely perform all obligations under a confirmed chapter 13 plan within a 60-month time limit, after which any curative payment is precluded. After 60 months elapsed in this bankruptcy case, the Debtors needed an additional $1,123 to complete the funding of their chapter 13 plan. Although the Debtors subsequently provided the necessary payment, one creditor seeks dismissal of this case on the basis that the plan payment period cannot be extended beyond five years of the petition date. The creditor claims the Debtors' last payment constitutes an impermissible

1

extension of the plan term. The creditor also seeks dismissal of the case on the grounds that the Debtors did not obtain their personal financial management course on a timely basis. Because the Debtors have acted in good faith by satisfying their plan obligations within a reasonable time, the Court does not find the creditor's objections to be well-founded and will deny her request for dismissal of the bankruptcy case.

## I.

Paul and Beth Ann Klaas commenced this bankruptcy case on December 31, 2009 by filing a voluntary petition for relief under chapter 13 of title 11 of the United States Code, 11 U.S.C. § 101, *et seq.* (the "Bankruptcy Code"). On January 23, 2011, the Debtors filed their amended chapter 13 plan which was confirmed by the Court on March 14, 2011. [Dkt. Nos. 102, 106]. The confirmation order allowed creditors or other parties in interest to file objections to the Order within 28 days, and it provided that the failure to file a timely objection "shall be deemed a waiver of all objections and an acceptance of the provisions of [the] confirmed Plan." [Dkt. No. 106].

Through the plan, the Debtors agreed to make monthly payments in the amount of $3,017 over a 60-month term. [Dkt. No. 102]. The plan provided for the payment of the Debtors' secured claims, including the cure and reinstatement of their mortgage loan, and the creation of an estimated pool of $8,837 for distribution to holders of allowed general unsecured claims. [Dkt. No. 102, § 16].

Creditor Elizabeth Shovlin holds an unsecured claim against the Debtors in the aggregate amount of $166,538.26.[1] The claim initially was filed by Guy Petrone for monies lent to the Debtors and certain third parties. On March 21, 2014, Mr. Petrone transferred the claim to

---

[1] The unsecured claim is evidenced by Claim Number 31-1, which consists of a joint debt of $66,060.64 and an additional $100,477.62 obligation for which only Mr. Klaas is liable. See Proof of Claim No. 31-1.

2

Ms. Shovlin. [Dkt. No. 132]. Although Mr. Petrone entered an appearance in the case on May 13, 2010, neither he nor Ms. Shovlin ever objected to the plan or the Order confirming the plan.

After plan confirmation, the Debtors' bankruptcy proceeded uneventfully until the chapter 13 trustee filed a motion to dismiss the case. [Dkt. No. 137]. The motion alleged that 61 months had elapsed since the case was filed, but an additional $1,123 was needed to complete the plan funding, assuming that the Debtors resumed direct payment of their long-term debts beginning March 2015. [Id. at ¶ 5]. The trustee further indicated that she would withdraw her motion if the Debtors remitted sufficient funds to complete the plan. [Id. at ¶ 6].

Ms. Shovlin joined in the trustee's motion to dismiss. [Dkt. No. 140]. She claims section 1322(d)'s prohibition against a plan term in excess of five years prevents the Debtors from making a curative payment after 60 months have elapsed in the case.[2]

In response, the Debtors indicated they would complete the plan funding before the hearing on the trustee's motion. [Dkt. No. 139]. Prior to the hearing, the Debtors made two payments to the trustee in the total amount of $2,665.[3] The trustee acknowledged receipt of these payments and withdrew her motion to dismiss at the hearing.

Undeterred by the trustee's acknowledgement of a completed plan, Ms. Shovlin reiterated her request for dismissal. She contends that because the Debtors' last payment was made 63 months after the petition date, they are ineligible for a discharge under section 1328(a). She also claims the case should be dismissed because the Debtors failed to complete their post-petition debtor education course within the time required by the Bankruptcy Code.

---

[2] More recently, Ms. Shovlin filed a *Complaint Objecting to Discharge of Debts* which seeks to exempt her claim from discharge on grounds which are substantially similar to those raised in connection with the motion to dismiss. See Adv. Pro. No. 15-02087-GLT.

[3] The payment of $1,123 on March 16, 2015 was the amount needed to cure the shortfall under the plan. An additional payment of $1,542 was made on March 24, 2015 for the legal fees of Debtors' counsel as allowed by an Order dated March 16, 2015 [Dkt. No. 144].

## II.

This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A). The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1334(b). This Memorandum Opinion constitutes the Court's findings of fact and conclusions of law pursuant to Federal Rules of Bankruptcy Procedure 7052 and 9014. Upon consideration of the motion, the responses thereto, and the statements made by the parties at the hearing, the matter is ripe for adjudication.

### A.

The Court first considers whether the Debtors failed to timely attend a post-petition financial management course, and if so, whether this compels dismissal of the case. Section 1328(g) of the Bankruptcy Code requires all debtors to complete an instructional course on personal financial management as a condition to receiving a discharge in a chapter 13 case.[4] 11 U.S.C. § 1328(g). The Bankruptcy Code directs that the course be taken after the bankruptcy petition is filed, but it provides no specific deadline for the debtor to complete the instruction. Id. Instead, the time limit is established by Rule 1007(c) of the Federal Rules of Bankruptcy Procedure which requires a chapter 13 debtor to submit a statement evidencing completion of the course by no later than "the date when the last payment was made by the debtor as required by the plan[.]" Fed.R.Bankr.P. 1007(c). Bankruptcy courts may, at any time, exercise their discretion to enlarge the time by which the statement of completion must be filed. Id; see also Fed.R.Bankr.P. 1007(c) advisory committee's note (2008 Amends.) ("Because no party is

---

[4] The course was first mandated by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005. Its genesis can be traced to the National Bankruptcy Review Commission's 1997 report to Congress which recommended that all chapter 7 and 13 debtors have the opportunity to participate in a program for financial education to prevent future financial failure after a legal fresh start. Leslie E. Linfield, Financial Education: No Debtor Left Behind?, Am. Bankr. Inst. J., April 2011, at 24, 24, discussing, National Bankruptcy Review Commission Final Report, Bankruptcy: The Next 20 Years (Oct. 20, 1997), per Pub. L. No. 103-394, § 608, 108 Stat. 4107, 4147 (1994). A similar requirement exists for individual chapter 7 debtors. See 11 U.S.C. § 727(a)(11).

harmed by the enlargement, no specific restriction is placed on the court's discretion to enlarge the deadline, even after its expiration.").

In this case, the Debtors completed the personal financial management course on February 27, 2015 and corresponding statements of completion were filed on March 24, 2015. [Dkt. Nos. 146, 147]. Ms. Shovlin claims the statements were filed too late to comply with section 1328(g) and the penalty should be dismissal of the case.[5]

The failure to file a statement of completion does not warrant dismissal of the Debtors' bankruptcy case. Rather, the inability to complete the course only impacts the debtor's eligibility for a discharge. See 11 U.S.C. § 1328(g)(1) (providing only that the court "shall not grant a discharge" absent completion of the instructional course). If the necessary certifications are missing, the case may still be fully administered, but the Debtors forgo the ability to obtain a discharge of the obligations set forth in their plan.[6]

The Debtors were not delinquent in attending the personal financial management course, nor did they tardily file the statement of completion. As noted above, the Debtors' last plan payment was received by the trustee on March 24, 2015. By that date, the Debtors received

---

[5] Ms. Shovlin is no stranger to late filings since she first raised this issue in a "Supplement" electronically filed just eight minutes before the scheduled start of the hearing on the trustee's motion to dismiss. [Dkt. No. 149]. Notwithstanding her own tardiness, the Court will address these issues for the purpose of avoiding similar arguments in the future.

[6] See Fed.R.Bankr.P. 5009(b) (requiring the clerk to notify the debtor that the case will be "closed without entry of a discharge" unless proof of completion of the financial management course is timely filed). The Rule 5009(b) notice was introduced as part of the 2013 amendments to the Bankruptcy Rules to encourage submission of the certification before the filing deadline. The Advisory Committee Notes explain that "[T]imely filing of the document avoids the need for a motion to extend the time retroactively. It also avoids the potential for closing the case without discharge, and the possible need to pay an additional fee in connection with the reopening." See Fed.R.Bankr.P. 5009(b) advisory committee's note (2010 Amends.).

5

the requisite instruction and filed their statement of completion. The Debtors therefore satisfied the personal financial management requirements in compliance with Bankruptcy Rule 1007(c).[7]

**B.**

As an alternative approach, Ms. Shovlin seeks dismissal of this case on the basis that the Debtors' plan payments were not completed within 60 months, the maximum time period afforded under Bankruptcy Code section 1322(d). She claims the Debtors have no right to cure a default after the plan term expires. Finding no statutory basis for this position, the Court rejects a "hard and fast" rule that prohibits a debtor from curing a plan default within a reasonable period of time, even if the default occurs in month 60 of the plan.

Section 1322 sets forth the mandatory provisions that must be contained within every chapter 13 plan, including the term by which all plan payments are to be made. In accordance with section 1322(d), the maximum duration of a plan term cannot exceed five years. 11 U.S.C. § 1322(d). Similarly, section 1329(c) prohibits approval of any modified plan that extends the payment period beyond five years. 11 U.S.C. § 1329(c). By placing a finite limitation on the term of a chapter 13 plan, section 1322(d) manifests Congressional intent to protect debtors from involuntary servitude. See, e.g., In re Henry, 368 B.R. 696, 701 (N.D. Ill. 2007), citing In re Nahat, 315 B.R. 368, 374 (Bankr. N.D. Tex.2004) (citing H.R.Rep. No. 95–595, at 117, 321–22 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5963, 6078 and S.Rep. No. 95–989, at 33 (1978), U.S.Code Cong. & Admin.News 1978, p. 5787); In re Woodall, 81 B.R. 17, 18 (Bankr. E.D. Ark. 1987) (concluding from a review of the legislative history that

---

[7] Even if the Debtors failed to complete the course on a timely basis, the Court is given wide latitude to extend the deadline. See Fed.R.Bankr.P. 1007(c) and 9006(b)(3). Because the Debtors satisfied the requirements here, the Court need not address the appropriate standard to be applied when considering a request for a retroactive extension of time. See In re Lauro, CIV. A. 07-670, 2007 WL 4180683 (W.D. Pa. Nov. 20, 2007) (applying an "excusable neglect" standard in a case which predates recent amendments to the Bankruptcy Rules).

section 1322(c) prohibits plans in excess of five years to prevent the debtor from becoming a "wage slave"); In re Black, 78 B.R. 840, 841-42 (Bankr. S.D. Ohio 1987); In re Hill, 374 B.R. 745, 749 (Bankr. S.D. Cal. 2007) (Congress intended the time limitation in section 1322 to provide debtors with a proverbial fresh start within a reasonable period of time and to protect them from involuntary servitude.).

A plan's compliance with the requirements of section 1322 is determined at the time of plan confirmation, pursuant to Bankruptcy Code section 1325(a). Upon entry of a final confirmation order, the debtor is deemed to have satisfied section 1322, and the plan document thereafter controls.

The failure to make payments as required under a confirmed plan constitutes a plan default. A plan default does not turn into a violation of section 1322(d) simply because it occurs in month 60. When a plan default occurs early in the case, debtors often are given an opportunity to cure the default within a reasonable period of time provided they are acting in good faith. The result should be no different when the default occurs at the end of the case due to circumstances that were unknown at the time of confirmation. As the case enters its final months, debtors who have established a lengthy track record of good faith should not be denied an opportunity to cure a deficiency solely because 60 months have passed. To do so would impose a standard of perfection at the conclusion of the plan term that does not exist at any other point in the case.

Numerous courts have considered whether the maximum plan term in section 1322(d) imposes a "drop dead" date for debtors to complete payments under their plan, and most conclude that it does not. See In re Aubain, 296 B.R. 624 (Bankr. E.D.N.Y. 2003) (debtor was not prohibited by the statutory restriction on the length of chapter 13 plans from curing

scheduled plan payments after the fifth anniversary of confirmation); In re Brown, 296 B.R. 20, 21 (Bankr. N.D. Cal. 2003) ("while the court may not confirm a plan which is to run for more than 60 months, nothing in the Code mandates dismissal of a case with a confirmed plan which ends up needing some extra time to complete."). But see In re Roberts, 279 B.R. 396 (B.A.P. 1st Cir. 2000) aff'd, 279 F.3d 91 (1st Cir. 2002) (debtors' failure to pay post-petition tax claims of $53,619 was a material default that warranted dismissal); In re Jackson, 189 B.R. 213 (Bankr. M.D. Ala. 1995) (debtors' priority claims were not paid in full and they could not pay the shortfall). The Court agrees with the reasoning of the majority and concludes that section 1322(d) does not serve as the basis for dismissal of the Debtors' case.

The statutory authority for dismissal of a chapter 13 case lies within section 1307. A court may dismiss a case for cause when it is deemed to be in the best interests of creditors and the estate. 11 U.S.C. § 1307(c). Although "cause" is not defined, section 1307(c) provides a non-exhaustive list of factors that may constitute a basis for dismissal. In re Lilley, 91 F.3d 491, 494 (3d Cir. 1996). Even if "cause" is found to exist, dismissal is not mandated by the statute. See In re Hill, 374 B.R. at 749 ("Congress certainly could have written 'shall convert or dismiss', but instead Congress wrote 'may', which grants this Court discretion to decide whether to dismiss even in the face of a material breach."). Rather, it is within the bankruptcy court's discretion to convert or dismiss the case after examining the facts on a case-by-case basis. In re Henry, 368 B.R. at 701, citing In re Cutillo, 181 B.R. 13, 14 (Bankr. N.D. N.Y.1995); In re White, 126 B.R. 542, 546 (N.D. Ill. 1991) ("Dismissal or conversion under [§ 1307] is not automatic, rather it is a matter of the Court's discretion").

For the purpose of this case, the Court identifies only two enumerated factors which could serve as the basis for case dismissal:

(1)  an unreasonable delay by the debtor that is prejudicial to creditors; and

\*   \*   \*

(6)  a material default by the debtor with respect to a term of a confirmed plan

See 11 U.S.C. § 1307(c). Aside from her claims under section 1322(d), Ms. Shovlin has not asserted any other grounds for dismissal.

Upon review of the record, the Court finds that a material plan default occurred based upon the trustee's audit which revealed a payment shortage of $1,123. The Debtors agreed to make all required plan payments within a 60-month term, but they failed to do so. By the time of the hearing on the trustee's motion, the default was no longer material because the Debtors cured the default and fully funded their plan obligations. Having received the necessary funds, the trustee withdrew her motion to dismiss.

The Court further concludes that the default was not the result of an unreasonable delay by the Debtors. In so finding, the Court notes that the Debtors made all of the monthly payments called for in their plan, tendering in excess of $170,000 to the chapter 13 trustee. At the end of the plan term, they owed less than one-half of a plan payment to complete the plan base. When the trustee's motion to dismiss was filed, the Debtors promptly corrected the deficiency. The plan base is now complete and the 46-day delay did not significantly alter the timing of plan distributions to creditors.[8] To deprive the Debtors of a discharge under these circumstances would be contrary to the spirit and intent of the Bankruptcy Code which offers a

---

[8] The Court concludes that a delay of 46 days did not materially affect the value of the distributions creditors will receive under the plan. Pursuant to section 1325, creditors are entitled to distributions based upon, among other things, the present value of their secured claims or the liquidation value of the estate as of the effective date of the plan. As long as creditors receive distributions equivalent to the values set forth in the confirmed plan, there can be no prejudice. Ms. Shovlin did not object to confirmation of the plan, nor has she articulated how she might be prejudiced by the Debtors' belated final payment.

9

"fresh start" to the honest, but unfortunate debtor. See Marrama v. Citizens Bank of Massachusetts, 549 U.S. 365, 367 (2007).[9]

In light of the foregoing, the Court concludes that the Debtors have completed their plan obligations and the request for dismissal shall be denied.

A separate Order will issue.

Dated: June 4, 2015

GREGORY L. TADDONIO
UNITED STATES BANKRUPTCY JUDGE

---

[9] Ms. Shovlin places misguided reliance upon In re Borkowski, 446 B.R. 220 (Bankr. W.D. Pa. 2011). In Borkowski, a lender sought to vacate an order determining that its mortgage was brought current. The lender claimed a deficiency existed because the debtor's plan failed to address a mortgage payment change that was retroactively applied, in contravention of the terms of the confirmed plan and local procedures in effect at the time. The Court denied relief on the basis that the lender failed to seasonably protect its rights in spite of receiving notice of all relevant motions and orders filed in the case. The Court concluded that the lender's procrastination had prejudiced the debtor since the 60-month plan term expired, thereby depriving the debtor of the opportunity to amend the plan to address the shortfall over a period of months. The Borkowski decision does not prohibit the result where, as here, the Debtor makes a curative payment to complete the plan funding without formally extending the plan term. See Dkt. No. 140, ¶ 10.